**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **VALERIE JONES STRICKLAND,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **Civil Action No.** |
| **v.** ) | **26-10565-BEM** |
| ) | |
| **FRAMINGHAM PUBLIC SCHOOLS,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

**MEMORANDUM AND ORDER ON**
**DEFENDANT'S MOTION TO DISMISS**

**MURPHY, J.**

Defendant Framingham Public Schools ("FPS" or "Defendant") moves to dismiss the claims brought against it by Plaintiff Valerie Jones Strickland.  For the reasons below, the Court will grant the motion.

**I.    Background**

**A.    Factual Background**

Except where noted, the following facts are drawn from Strickland's complaint, Dkt. 17-1 ("Complaint" or "Compl."), and are accepted as true for the purposes of the motions to dismiss.

Plaintiff identifies as Black and disabled ("Communication Disorder, ADAH, Anxiety Disorder, and Sensory Processing Disorder/'Autism Spectrum Disorder'").[1] *Id.* ¶¶ 1, 7.  Sometime

---

[1] Strickland also states that she identifies as Native American, *e.g.*, Compl. ¶ 1, but does not appear to make any allegations against FPS related to her Native American identity.  Moreover, since she did not assert a claim based on that protected category in her Massachusetts Commission Against Discrimination ("MCAD") complaint, *see* Dkt. 23-1 at 2–3, she likely may not do so now, *see Carmack v. Nat'l R.R. Passenger Corp.*, 486 F. Supp. 2d 58, 95 (D. Mass. 2007).

prior to June 2023, she began working for FPS as a Special Education Paraprofessional.[2]  *Id.* ¶ 6. Strickland alleges that "throughout [her] employment [for FPS], she was subjected to a continuous pattern of adverse conduct, . . . hate crimes, harassment, bullying, victimization, and defamation" based on her race and disabilities, conducted by various other FPS employees.  *Id.* ¶¶ 8–9. Stickland further alleges that despite "perform[ing] her job duties effectively" in the face of this unlawful activity, she was placed on administrative leave on June 14, 2023.  *Id.* ¶¶ 10–11. Strickland states that she was told by the principal at the school where she was then working, Principal Schecter, that she was "not a right fit" for her role.  *Id.* ¶ 12.

Afterward, Strickland applied to 27 different paraprofessional positions within FPS between July and August 14, 2023.  *Id.* ¶ 13.  She was not hired for any of these roles and contends that, at this point, she had been constructively discharged.  *Id.* ¶ 16.  According to Strickland, she was not hired for these roles because she was not recommended after Principal Schecter made unspecified "false and defamatory statements regarding Strickland's professional competence or character" to unnamed third parties and to another principal.  *Id.* at 7, 11–13.[3]

On September 17, 2024, Strickland filed a Charge of Discrimination with the Massachusetts Commission Against Discrimination ("MCAD").  *Id.* at 15.  MCAD dismissed the charge on February 21, 2025, and affirmed the dismissal on May 22, 2025.  *Id.* at 16.  On September 2, 2025, Strickland received from MCAD a Notice of Dismissal and Notice of Right to Sue.  *Id.* at 16–17.

---

[2] The Complaint does not specify any dates prior to June 2023, when Strickland alleges the unlawful activity began.

[3] Beginning on page 7 of the Complaint, Strickland restarts the paragraph numbering.  The Court therefore cites to only the page numbers for the remainder of the Complaint.

**B.      Procedural Background**

On December 1, 2025, Strickland filed suit in Middlesex Superior Court.  Dkt. 1-1 at 63. On February 1, 2026, FPS timely removed the case to this Court.  Dkt. 1; *see also* Dkt. 19 (denying motion to remand).   On February 20, 2026, Strickland amended her complaint, which asserts claims under Mass. Gen. Laws c. 151B ("Chapter 151B"), the Americans with Disabilities Act ("ADA"), Title VII of the Civil Rights Act of 1964 ("Title VII") and Massachusetts common law. *See generally* Compl.  The Complaint specifically brings claims for employment discrimination (Count I), retaliation (Count II), hostile work environment (Count III), and defamation (Count IV). *Id.*  On March 6, 2026, FPS moved to dismiss all claims.  Dkt. 22; *see also* Dkt. 23 ("Mem."); Dkt. 28 ("Opp.").

**II.      Standard of Review**

Courts analyzing claims under Federal Rule of Civil Procedure 12(b)(6) must determine whether a plaintiff's factual allegations, disregarding all "conclusory" statements, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  At the pleading stage, plaintiffs need not demonstrate that they are likely to prevail, but "[their] claim must suggest 'more than a sheer possibility that a defendant has acted unlawfully.'" *García-Catalán v. United States*, 734 F.3d 100, 102–03 (1st Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678).  "The inquiry is usually limited to the facts alleged in the complaint, incorporated into the complaint, or susceptible to judicial notice," *Whelden v. U.S. Bank Nat'l Ass'n*, 494 F. Supp. 3d 68, 73 (D. Mass. 2020) (citing *In re Colonial Mortg. Bankers Corp.*, 324 F.3d 12, 15 (1st Cir. 2003)), "but the court may also consider other documents the authenticity of which is not disputed by the parties, documents central to the plaintiff's claim, and documents sufficiently referred to in the complaint," *id.* (citing *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993)).

"[T]he fact that the plaintiff filed the complaint pro se militates in favor of a liberal reading [of her complaint]." *Rodi v. S. New Eng. Sch. of L.*, 389 F.3d 5, 13 (1st Cir. 2004) (citing *Boivin v. Black*, 225 F.3d 36, 43 (1st Cir. 2000) (explaining that "courts hold pro se pleadings to less demanding standards than those drafted by lawyers")).  However, "pro se status does not insulate a party from complying with procedural and substantive law." *Ahmed v. Rosenblatt*, 118 F.3d 886, 890 (1st Cir. 1997).

### III.   Discussion

#### A.   Counts I–III

FPS argues that Counts I–III should be dismissed for failure to timely exhaust administrative remedies.  Mem. at 7–10.  A plaintiff bringing claims under Chapter 151B, the ADA, and Title VII must first exhaust her administrative remedies by filing an administrative claim with the MCAD or the Equal Employment Opportunity Commission ("EEOC") within 300 days of the alleged unlawful activity.  *Gamst v. Bos. Univ.*, 2024 WL 758173, at *2 (D. Mass. Feb. 23, 2024).  "Failing to file a timely administrative charge requires that any subsequent lawsuit be dismissed." *Id.* (citing *Davis v. Lucent Techs., Inc.*, 251 F.3d 227, 236 (1st Cir. 2001)).

The latest adverse action Strickland alleges occurred on August 14, 2023, the day she was placed on administrative leave.  Compl. ¶ 16.  As Strickland concedes, *id.* ¶ 5, her MCAD complaint was not filed until "399 days" after her claims accrued, thus falling outside the 300-day

4

administrative filing period as required by federal and state law, Opp. at 3.; *see also* Compl. at 14

Strickland instead argues that equitable tolling should apply.[4]  Opp. at 4–5.

Courts have recognized that some circumstances may permit equitable tolling of this requirement, though "[t]he First Circuit has taken a 'narrow view' of exhaustion requirements and equitable tolling is not intended to protect a plaintiff who fails to exercise due diligence." *Bangura v. Shulkin*, 334 F. Supp. 3d 443, 457 (D. Mass. 2018) (quoting *Frederique-Alexandre v. Dep't of Nat. & Env't. Res.*, 478 F.3d 433, 440 (1st Cir. 2007)).  A party asserting equitable tolling must demonstrate that: (1) she has been diligent in pursuing her rights and (2) extraordinary circumstances prevented her from filing on time.  *See Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005); *see also Bonilla v. Muebles J.J. Alvarez, Inc.*, 194 F.3d 275, 278 (1st Cir.1999) ("Generally speaking—peculiar circumstances may leave some wiggle room—equitable tolling is not appropriate unless a claimant misses a filing deadline because of circumstances effectively beyond her control").  As such, "[e]quitable tolling requires exceptional circumstances and a 'heavy burden of proving entitlement to equitable relief lies with the complainant.'"  *Bangura*, 334 F. Supp. 3d at 457 (quoting *Bartlett v. Dep't of the Treasury*, 749 F.3d 1, 10 (1st Cir. 2014)).

Strickland has failed to meet this heavy burden.  "There is no suggestion that [Strickland] was not aware of the . . . statute of limitations or did not have actual or constructive notice of it." *Correia v. Mass. Bay Commuter R.R.*, 2013 WL 6383107, at *3 (D. Mass. Dec. 4, 2013), *aff'd*,

---

[4] Strickland argues that her Complaint is timely because she filed her suit within the 90-day filing window after receiving her Notice of Right to Suit Letter.  Compl. ¶ 5.  Though this argument is not raised in her opposition, the Court addresses it due to her pro se status.  That said, Strickland cannot rely on the "right to sue" letter to save her claims.  This "pro-forma" text does not relate the issue of whether the underlying charge was timely filed.  *See Rivera-Munoz v. Shinseki*, 212 F. Supp. 3d 306, 312 (D.P.R. 2016) (collecting cases); *see also Mercado v. Ritz-Carlton San Juan Hotel, Spa & Casino*, 410 F.3d 41, 44 (1st Cir. 2005) (holding that the EEOC's issuance of right-to-sue letters did not insulate an exhaustion argument "from independent evaluation by the court").  As such, the fact that Strickland complied with the 90-day filing window after receiving a "right to sue" letter has no bearing on whether she timely filed her MCAD charge, and thus it cannot cure her failure to exhaust administrative remedies.

2014 WL 7506802 (1st Cir. Sept. 15, 2014); *see also* Opp. at 5 (arguing that Strickland had "no attorney to recognize the significance of the 300 day deadline, to act on her behalf, or to counsel her on the consequences of missing it"). Instead, Strickland emphasizes her disabilities and lack of representation by counsel as the justification for equitable tolling. Opp. at 4–5. But the First Circuit has made clear that for mental illness to justify equitable tolling, it must be "so severe that the plaintiff was unable to engage in rational thought and deliberate decision making sufficient to pursue [her] claim alone or through counsel." *Vazquez-Rivera v. Figueroa*, 759 F.3d 44, 50 (1st Cir. 2014) (quoting *Meléndez-Arroyo v. Cutler-Hammer de P.R. Co.*, 273 F.3d 30, 37 (1st Cir. 2001)). Strickland has provided no basis from which the Court can conclude that her mental disabilities impacted her "rational thought and deliberate decision making." *See id.* Instead, after her termination, she was working a full-time "9-5 job," engaged in graduate course studies and working to complete "pending graduate course work deadlines," commuting "3 hour[s] per day" to and from her full-time job, and "caring for her son's post cancer hospital and oncology visits." Compl. at 16. These facts undermine any contention that Strickland was unable to understand or act on her legal rights during this time, and thus she fails to establish entitlement to equitable tolling.[5] *See Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984) ("Procedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants.").

---

[5] Nor does the fact that Strickland lacked legal representation impact on this analysis. Contrary to Strickland's arguments, *see* Opp. at 5, the First Circuit's decision in *Lopez v. Citibank, N.A.*, does not stand for the proposition that an unrepresented plaintiff with a mental disability is entitled to equitable tolling. *See* 808 F.2d 905, 906–07 (1st Cir. 1987) (noting that the issue of whether a mental disability requires tolling is a case-specific analysis, and the fact that the plaintiff had legal representation weighted against equitable tolling); *see also Muller v. Bedford VA Admin. Hosp.*, 2013 WL 702766, at *5 (D. Mass. Feb. 25, 2013) (explaining that a "'lack of legal acumen' cannot substitute for the diligence that the courts require to invoke equitable tolling" (citing *Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S. 147, 151 (1984))); *Correia*, (explaining that "*pro se* status does not provide an independent basis for the Court to toll the statute of limitations. "[I]t is well established that ignorance of the law, even for a[] . . . pro se [plaintiff], generally does not excuse prompt filing" (alterations in original) (quoting *Stonier v. United States*, 2011 WL 1877670, at *4 (D. Mass. Apr. 7, 2011))).

As such, Counts I–III must be dismissed for failure to exhaust administrative remedies.

**B.**     <u>**Count IV**</u>

FPS argues that Strickland has also failed to state a claim for defamation.  Mem. at 13–17.
"To prevail on a defamation claim, the plaintiff must show that (1) the defendant published a
statement (2) concerning her that was both (3) defamatory and (4) false, which (5) caused the
plaintiff to suffer economic harm or harm to her reputation."  *Yaghoobi v. Tufts Med. Ctr., Inc.*,
762 F. Supp. 3d 85, 96 (D. Mass. 2025).  "[T]o be actionable, the statement must be one of fact
rather than of opinion."  *Scholz v. Delp*, 473 Mass. 242, 249 (2015).

The Complaint fails to identify any defamatory statements: Strickland merely alleges that
"upon information and belief," Principal Schecter made unspecified "false and defamatory
statements regarding Strickland's professional competence or character" to unnamed third parties
and to another principal.  Compl. at 7, 11–13.  But a "plaintiff's hunch that statements made to the
police or others must have been false and pejorative is too speculative to viably allege that a
defendant disclosed . . . false and defamatory information."  *Yaghoobi*, 762 F. Supp. 3d at 96.[6]  As
such, Strickland has failed to state a claim for defamation.

**IV.**     <u>**Conclusion**</u>

For the foregoing reasons, Defendant's motion to dismiss is GRANTED.

**So Ordered.**

/s/ Brian E. Murphy
Brian E. Murphy
Dated: April 15, 2026                    Judge, United States District Court

---

[6] Even if Strickland had sufficiently identified false statements made about her, she has failed to plead any
facts to overcome the conditional privilege granted to employers, which permits employers to "disclose defamatory
information concerning an employee when the publication is reasonably necessary to serve the employer's legitimate
interest in the fitness of an employee to perform his or her job."  *Butler v. Adecco USA Inc.*, 189 F. Supp. 3d 305, 311
(D. Mass. 2016) (quoting *White v. Blue Cross & Blue Shield of Mass., Inc.*, 442 Mass. 64, 69 (2004)).  Strickland has
not alleged that the purportedly defamatory statements concerned anything beyond her character or professional
competency, which are relevant to FPS's legitimate interests in hiring.